ALLEN HUNTER *et al.*, Appellants, *v.* JOSEPH BLANCHARD,
Appellee.

APPEAL FROM PEORIA.

In a proceeding to enforce a lien, for lumber furnished to erect a building, a person
who acts as clerk, to be paid by a share in the profits of the business conducted
by the parties, against whom the lien is sought to be enforced, is a competent
witness for such parties.

The lien in such case only attaches where the material furnished has been actually
used on the land and building.   There must not only be a contract, but an actual
use of the materials furnished.

ON the 23d of March, 1855, Blanchard filed his petition in
the Peoria Circuit Court, against Frederick R. Gunn, Samuel
Gates, and Sylvester S. Philley, to enforce a mechanic's or
furnisher's lien, to the amount of $964.51, against lots 8 in
block 1, and 2 in 46, in the town of Chillicothe, in said Peoria
county.

The petition states that on the 1st of July, 1854, Gunn and
Gates were partners in business; and the owners of said lots;
that as such they contracted with petitioner to furnish lumber
to the above amount, to be used in building on said lots; that
this amount was furnished by petitioner, between the 13th of
July and the 4th of December, 1854, and that Gunn & Gates
*then* promised to pay the amount, but have not paid any part
of it; that about December 4, 1854, Gunn & Gates failed and
assigned and conveyed all their property to Philley, who knew
of the claim of the petitioner; that the time for furnishing
the lumber did not cover a longer period than three years,
nor was payment to be delayed more than one year after
delivery.

On the second of May, 1855, petitioner files an amendment
and supplement to his petition, making said Hunter, Cooper
and Pratt, defendants, stating that they claim some interest in
the lots, but took such interest knowing of the claim and lien
of petitioner, and subject thereto.

The answer of defendants admits that Gunn & Gates were
partners, and owned the lots as stated, denies knowledge of
contract and calls for proof.   Admits that some lumber was
furnished and used in building on said lots, but don't know
how much, and says it was all paid for.   Admits that Gunn
and Gates became involved, and assigned their property to
Philley for benefit of creditors.   Answer then sets up that
Philley left the State; that his authority as trustee was revoked
by decree of the circuit court of said Peoria county, at the
May term, 1855, and Cooper and Pratt substituted as trustees
in his stead; that Hunter had purchased the lots, but denies

all knowledge of the lien or claim of petitioner, and that he took subject to it, and charges that petitioner has no such lien or claim.

A replication is filed, and the cause tried by a jury at the November term, 1856, who find for petitioner the sum of $632.19.

The bill of exceptions shows that on the trial the petitioner called John C. Eolliott, who testified that in 1854 he was agent for petitioner, at Chillicothe, in said Peoria county, petitioner residing at Chicago; that Gunn & Gates were merchants in Chillicothe, and built a warehouse and addition to their store; that before beginning to build they applied to petitioner for lumber, and gave a bill of what they wanted, and paid $400 in advance to apply on it. This was in June, 1854. The lumber was not on hand at the time, and before any of it came Gunn & Gates changed the plan of their warehouse, and did not want the particular stuff first called for, but gave a new bill and got the lumber in the bill attached to the petition, amounting to $964.51, in lieu of it. Witness delivered this lumber in the summer and fall of 1854, and Gunn & Gates were to pay for it as delivered. Some of this lumber went into the warehouse and store, but how much of it witness did not know.

In addition to the $400, Gunn & Gates paid petitioner $216, in cash, and freighted lumber for him from Chicago to amount of between one and two hundred dollars more. Don't remember the exact amount, but the $216 and the freights made the amount indorsed on the notes of Gunn & Gates to petitioner.

Petitioner sold the lumber specified in the first bill given in by Gunn & Gates. After the assignment of Gunn & Gates, Philley, the assignee, agreed with Blanchard and witness to apply the $216 and the freights, on certain notes held by Blanchard on Gunn & Gates, and given for a canal boat. We gave one note up to Philley, and indorsed the balance on another.

Here petitioner offered in evidence a note for $300, given by Gunn & Gates to petitioner, dated September 1, 1854, and due November 1, 1854, with $216 indorsed, as of date November 7, 1854, and $84, in full, indorsed November 25, 1854, to the reading of which to the jury defendants objected, but the court permitted the same to be read, to explain application of payments, but not to show indebtedness or consideration, and defendants excepted. This witness further stated that when Philley agreed to this arrangement, witness knew that Gunn & Gates claimed that the consideration of these notes had failed. The deed of assignment was acknowledged before witness, and witness knew it was made when the credits were indorsed on the notes.

Petitioner next called Henry Beebe, who said he worked on the warehouse. Went once or twice for lumber, and knew that a considerable part of the lumber in the warehouse came from Blanchard's yard. And here petitioner closed.

Defendants then offered:

1st. The note and indorsements above named.

2d. The assignment of Gunn & Gates to Philley, dated December 4, 1854, transferring the whole property of the firm, the lots named included, to said Philley, in trust, for the benefit of creditors.

3d. The petition of Charles W. Pierce *et al.*, creditors, etc., of said firm, against said Philley *et al.*, with proceedings and decree of the Peoria Circuit Court therein, showing the removal of Philley and substitution of said Cooper and Pratt as trustees under said assignment, and confirming the sale of said lots and other property made to Hunter by said Philley, on the 15th of January, 1855, all of which were read in evidence to the jury.

Defendants then produced Henry H. McNeal as a witness, who being first sworn by petitioner, on his *voire dire*, stated that he was not aware he had any interest in said suit; that when Gunn & Gates went into partnership they agreed to keep witness as general agent and manager in place of Gates; that Gates owned a two-thirds interest in the concern, and that it was afterward arranged between Gates and the father-in-law of witness, that witness should get for his services one-third the net profits, to come out of Gate's share; that his father-in-law also paid Gates $200, and gave his note for $30, for the interest in profits to be given to witness; that Gunn knew nothing of the arrangement. Defendants then produced and filed a release, duly executed by said witness, of all his interest in said firm, its property, profits, and effects, and in any surplus that may remain for distribution to either partner, after payment of debts. But petitioner still objected to the witness on the ground of interest. The court sustained the objection and defendants excepted.

And here the evidence closed.

Petitioner then asked the following instructions, all of which the court gave as asked, and defendants excepted, which said instructions are, in substance, as follows:

If the jury believe, from the evidence, that petitioner furnished lumber and materials for Gunn & Gates, under a contract as charged in the petition, they should find for petitioner the amount or value of the materials furnished by him, less any payments made and proved by the defendants.

The jury may allow petitioner interest on the amounts found to be his, and if they should further find that there has

been an unreasonable and vexatious delay in making payment.

This is not a proceeding to adjust conflicting accounts between Gunn & Gates and petitioners, and the only matter proper to be considered by the jury is to inquire whether anything is due the petitioner on the lumber mentioned in his account, and if so, how much. If the jury believe, from the evidence, that there have been payments made to apply on the lumber, such payments should be allowed and deducted from the whole amount of lumber furnished.

If the jury believe, from the evidence, that Philley acted as agent or clerk for Gunn & Gates, and had authority to make settlements and entries in the books of the firm; and if they further believe, from the evidence, that Blanchard and Philley settled the accounts and applied the amount on the notes, this settlement is binding on Gunn & Gates.

If the jury believe, from the evidence, that a settlement was made between Philley, as assignee, agent, or clerk of Gunn & Gates, and Blanchard, and in the settlement Blanchard delivered to Philley, Gunn & Gates' note for $300; and if the jury further believe, from the evidence, that said note has been in the possession of defendants without objection, for over a year, this is proper evidence to be considered by the jury in finding that the settlement made was approved of by the parties in interest.

If the jury believe that Philley was the assignee of Gunn & Gates, and while so acting, and having their books, accounts and assets in his possession, consented to take the $300 note from Blanchard, as part payment of demands against Blanchard, and also consented to the indorsement on the other notes, then, in that case, said $300 note and said indorsements should be allowed as a credit to Blanchard.

And defendants below asked instructions as follows, which the court refused and defendants excepted.

1. It is not enough that petitioner prove that he sold lumber to Gunn & Gates; he must also prove that he sold such lumber for the sole and express purpose of erecting the buildings in the petition named, and that the lumber was so applied. And if the jury believe that only a part of said lumber went into such buildings, then they should find only for the amount proved to have been so used.

2. If the jury believe, from the evidence, that all the lumber sold and delivered by Blanchard to Gunn & Gates was delivered more than six months prior to May 2, 1855, and that said lumber was to be paid for on delivery: and if the jury further believe that Hunter, prior to the commencement of this

suit, purchased the lots in question, without actual knowledge of petitioner's claim, the jury should find for the defendants.

6. The answer of defendants to the petition herein, so far as responsive thereto, *is evidence*, and unless disproved by evidence stronger than the testimony of one witness, should be taken by the jury as true.

7. Philley, assignee, had no authority to change the application of payments made before his appointment, and any act of that kind was beyond his authority, and void.

Whereupon the jury rendered the following verdict:

"We, the jury, find the issues for the petitioner, and that there is due him on the contract in the petition specified, the sum of $632.19."

Defendants thereupon move for a new trial, which motion the court overruled.

Defendants moved in arrest of judgment, which motion the court overruled, and entered a decree against said Gunn & Gates for the amount of the verdict, and directed the sale of the lots in the petition named, to pay the amount and costs. To all which defendants except, and thereupon said defendants, Hunter, Cooper and Pratt, enter their motion and file bond for an appeal, which was allowed, and the following errors assigned upon the record:

1. The court erred in overruling demurrer to original and amended petition:

2. In admitting improper evidence for complainant.

3. In excluding proper evidence offered by defendants.

4. In refusing to admit McNeal to testify for defendants.

5. In giving erroneous instructions for petitioner.

6. In refusing proper instructions asked by defendants.

N. H. PURPLE and J. K. COOPER, for Appellants.

GROVE and McCOY, for Appellee.

CATON, J. The court erred in excluding the testimony of the witness McNeal, offered by the defendants below. Admitting that, as partner with Gunn & Gates, he was liable to Blanchard for this debt, then his interest was against the defendants in this suit; for, if the suit was maintained so as to enforce its collection out of this specific property, he became thereby released from his obligation, as partner, to pay it. If the complainant failed to maintain this suit, he could turn round and sue McNeal, as partner, and collect it from him, the same as if he had never proceeded to enforce his supposed lien against this property. A decree against Blanchard, in this suit, would be no evidence that the debt was not due him

from the firm, but it would only establish the fact that he had no specific lien upon this property, for lumber furnished in the erection of the building upon it. The testimony should have been admitted.

The court also erred in instructions given for the complainant, and in refusing instructions asked by the defendants. This error originated in a misapprehension of the statute under which this suit was brought. The first section of that act is this : "Any person who shall, by contract with the owner of any piece of land or town lot, furnish labor or materials for erecting any building, or the appurtenance of any building, on such land or town lot, shall have a lien upon the whole tract or town lot, in the manner herein provided, for the amount due to him for such labor or materials." The second section proceeds : "The lien shall extend to all work done or materials furnished, under the provisions of the contract, whether the kind or quality of the work or amount to be paid be specified or not." In the instructions the court substantially construed this law as giving the lien whenever a contract has been made for the furnishing of materials to be put in a building on the lot; and in pursuance of such contract, materials have been furnished, whether those materials, thus furnished, were actually used in the erection of such building or not. We do not so understand this law. The legislature only intended to give this lien for the materials actually used in, or the labor really bestowed upon, the building situated upon the premises against which the lien is sought to be established. The object of the law was to allow the party to pursue the thing actually furnished. Two things must concur to create the lien—*first*, the contract ; and *second*, the furnishing of the material actually used. Suppose, in this case, there was a contract made, and, in pursuance thereof, the lumber was furnished, which was found to be unsuitable for the building, and was, consequently, sold to other parties, and never put in the building at all, but the lumber actually used was furnished by another, under another contract. The statute certainly gives a lien to the one who furnished the lumber which was used in the building, and to the workmen who did the work in the erection of the building, and yet, according to the construction given by the court below, the party who made the first contract, and furnished lumber never used upon the premises, may also have a lien upon the same building and premises. Not for anything which he has done to enhance their value, nor by reason of any incumbrance upon them, but because the owner of the premises had purchased lumber for the purpose of using it on the premises, but which he never did so use.

Under the construction given to this law, who has the prior

lien? The party who furnished the materials with which the building was actually erected, or the one whose materials were not put in the house? The legislature intended to create no such conflicting claims. The very essence of the lien created by this statute is the furnishing the materials of which the building is constructed. The act continues in the party furnishing the materials of which the building is erected, a *quasi* property in those materials, and others with which it has been commingled in the building, and allows him to follow it, thus transformed, for the purpose of getting his pay. If materials are furnished me for the purpose of being put upon lot one, and I put them on a building in lot two, the lien is upon the last lot, where they were actually used, and not on the first. There is no lien upon the premises till the material is put upon them. Under this construction, if a man goes to Chicago and buys lumber to build a house on a particular lot in Chillicothe, and *in transitu* the lumber is burned up, the vendor shall have his lien upon the lot for the amount so furnished. Such is not the true construction of this law. The legislature never so intended.

The decree of the circuit court must be reversed and the suit remanded.

*Decree reversed.*