THE R. HAAS ELECTRIC AND MANUFACTURING COMPANY *et al.* Appellees, *vs.* THE SPRINGFIELD AMUSEMENT PARK COMPANY *et al.* Appellants.

*Opinion filed October 26, 1908—Rehearing denied Dec. 4, 1908.*

1. MECHANICS' LIENS—*an owner who consents to lessee making improvements subjects his interest to lien.* An owner of the fee of leased land who consents that the lessee shall make improvements which shall remain upon the property for the benefit of the lessor at the expiration of the lease, there being no restriction as to the extent of such improvements, subjects his interest to mechanics' liens for labor and materials furnished for the improvements, and cannot be heard to say that the cost is excessive or the improvements undesirable.

2. SAME—*when mere proof of delivery is not sufficient.* Section 7 of the Mechanic's Lien law, which provides that a lien for material shall not be defeated for lack of proof that the material, after the delivery thereof, actually entered into the construction of the improvement, does not apply to "fixtures, machinery or apparatus," and no lien can be allowed for such fixtures, machinery or apparatus without proof that they have been so used as to become a part of the real estate.

3. SAME—*what items are not proper subjects of lien.* Items for street car tickets and meals for the superintendent of the work of an electrical company in an amusement park, and for carboys which were to be returned to the company, should not be included in the amount of a mechanic's lien established in favor of such company.

4. SAME—*what is not a payment which may be credited upon non-lienable claims.* The fact that the contractor has credited the owner's account with a certain amount for material returned does not amount to a payment upon the contract which may be applied upon items of the account which are non-lienable, even though the material returned is of a character for which a lien is allowable.

5. APPEALS AND ERRORS—*court of review cannot consider matters dehors the record.* A court of review considers a case upon the record made in the court below, and cannot consider matters *dehors* the record which are only brought to the attention of the court by statements of counsel in their briefs.

6. SAME—*a party not objecting to the master's finding is bound thereby.* A party who makes no objection to the finding of the master as to the amount due such party is concluded by the master's finding, and the chancellor is not authorized to increase such amount by the addition of interest.

7. SAME—*when right to question allowance of attorney's fees is waived.* The right to question the allowance of attorney's fees in a mechanic's lien case upon the ground of the unconstitutionality of the statute is waived where no objection to such allowance was raised in the court below, or where, even though raised, the case was taken to the Appellate Court instead of directly to the Supreme Court.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal to the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

This is a bill in chancery filed by the R. Haas Electric and Manufacturing Company (which will hereinafter be designated as the electric company,) against the Springfield Amusement Park Company, (which for convenience is hereinafter called the park company,) the Peter Vredenburgh Lumber Company, (hereinafter called the lumber company,) Thomas D. Hogan, F. Reisch & Bros., and certain other parties, defendants, to enforce a mechanic's lien.

It appears from the bill that on the second day of March, 1906, the electric company entered into a contract with the park company by which the electric company contracted to furnish all labor and material for electric wiring, motors, accessories, plumbing, piping, etc., to be used in the Springfield Amusement Park Company's White City Park of Springfield, Illinois, to be located at the east end of Capitol avenue, now known as Reisch's Park; that said materials and labor were to be furnished at the regular retail prices; that in consideration of this contract the electric company agreed to subscribe for $1000 of the capital stock of the park company, to be paid for in material and labor, provided that such subscription did not exceed forty per cent of the total amount of the materials and labor furnished by the electric company. The bill avers that in pursuance of such contract the electric company furnished all labor and materials for electric wiring, motors, accessories, plumbing,

piping, etc., used in the said park company's White City Park and complied in all respects with the said contract, and that such material and work had been accepted and used by the park company. The bill alleges that there is due the electric company $4297.36, together with interest from July 5, 1906, at five per cent. To said bill the electric company attached a schedule marked "Exhibit A" and made the same a part of the bill, which purports to be an itemized bill, the aggregate of which is the amount above stated. The several corporations and individuals that are made defendants to the bill are alleged to have or claim some interest in the premises, the precise nature of which is alleged to be unknown to the electric company. It is charged that the interest or claim of the several defendants, if any, is subject to the lien of the electric company, and that all of said parties defendant knowingly permitted the park company to contract for and receive and obtain the materials, labor and improvements furnished by the electric company.

The lumber company answered the bill, neither admitting nor denying any of the facts upon which the electric company predicated its right to a lien, and prayed that strict proof might be required as to all such facts. The lumber company by its answer set up a claim for lien in its behalf for lumber and building materials furnished by said lumber company to the park company under a verbal agreement of April 30, 1906. The lumber company also agreed to subscribe for $1000 of the capital stock of the park company, to be paid for in building material. To its answer the lumber company attached an itemized bill showing a balance due it of $5926.19, for which sum the lumber company also claims a lien upon the premises described in the bill. The park company also answered the bill, in which it denied all of the material averments in the bill. F. Reisch & Bros. answered the bill and disclaimed all knowledge of the alleged contract or the material furnished or work done thereunder, and demanded strict proof of the same. They set

up in their answer that they have an interest in said prem-
ises as sub-lessors to the park company. Thomas D. Hogan
filed an answer to the bill, in which he claims to be the
owner in fee simple of the real estate described in the bill.
He denies all the averments in the bill in so far as the same
affect his interest. Replications to these several answers
were filed and the cause was referred to a master in chan-
cery to take the proofs and report his findings.

In behalf of the electric company, Rudolph Haas, the
president of the company, testified that under the contract
offered in evidence the electric company furnished all mo-
tors, electric lights, wiring and accessories, which were
properly installed by labor furnished and paid for by the
electric company, at the White City grounds at the end of
East Capitol avenue; that the materials were furnished and
work done in various buildings, such as the theater, roller
coaster and other buildings; that more or less work was
done on all the buildings in the park. This witness states
that the electric company complied with the contract and
paid all workmen, sub-contractors and material-men who did
work for it under said contract, and that the park company
owed the electric company $4297.36, besides the interest,
less the amount of stock subscribed for by the electric com-
pany.

Herman Armbruster, who superintended the electrical
construction for the electric company, also testified on be-
half of the complainant. This witness testifies that the
work was done during June and July, 1906. In reference
to the character of work done this witness says: "We
worked there on the entrance building,—entrance gate,—
and put on the electrical sign 'White City.' That was put
right in front of the entrance, on the wood-work there. We
put the sign on two buildings, refreshment stands, pagodas,
sign on the main stand, dancing pavilion, bridge, theater,
(interior and exterior,) porch around the old building, ad-
ditional lights in the kitchen and rear porch on the rear

building, penny arcade, shooting gallery, bowling alley and pool, rough house, house of trouble, fun factory, cave of the winds, roller coaster, photograph gallery, Japanese bowling alley, three ice cream cone stands, throwing-the-ring stand, knock-the-baby-down stand, the out-houses, wiring for fourteen arcs in and around the park, putting up buffet sign on porch around old building, theater sign on theater, signs on the penny arcades, shooting gallery, bowling alley, house of trouble, fun factory, etc. We also decorated an actual tree, called the 'Christmas Tree.' We wired that complete. We furnished three-light clusters at the entrance to the theater and one five-light cluster at the band stand. The itemized statement attached to complainant's bill is complete. They were all delivered. I delivered most of them myself." This witness testifies also that during the time that this work was being installed Thomas D. Hogan, the owner of the land, was frequently out there and witnessed the work going on but that the witness had no conversation with him.

In addition to the testimony of these two witnesses the electric company introduced a lease dated October 29, 1903, between Thomas D. Hogan and F. Reisch & Bros. for the 38.44 acres described in the bill, which lease is for five years from November 1, 1903, with the privilege of renewing for five years additional. The lease provides that the premises are to be occupied for saloon and park purposes and for no other purposes whatever. The lease provides that the lessees are to keep the premises in good condition and repair and pay a rental of $75 per month. The lease provides that the lessee should not assign or sub-let without the written consent of the lessor. Under date of April 1, 1906, there is a written consent, signed by Thomas D. Hogan, to the sub-letting of said premises to the said park company. The written consent to the sub-letting recites that the park company should have the right to make improvements on said premises, provided that all improve-

ments, alterations and additions made by the said company should remain on the premises at the expiration of the lease, for the benefit of the lessor. This was all the evidence offered by the electric company in support of its bill, except that proof of a solicitor's fee was made and such fee allowed in the sum of $160.

On behalf of the lumber company evidence was offered proving that the lumber company furnished the material for which it claims a lien. There is no serious dispute about the lumber company's claim. There is some question in regard to the interest allowed the lumber company. Evidence was also submitted in regard to the amount of a reasonable solicitor's fee for the lumber company, and $125 was allowed as such fee.

Upon this evidence the master in chancery found that the electric company was entitled to a lien for $4297.36 and that the lumber company was entitled to a lien for $4111.73, after allowing credits about which there is no dispute. Numerous objections were filed before the master by Hogan, F. Reisch & Bros. and other defendants, all of which were overruled and allowed to stand, by agreement, as exceptions. The decree of the court sustained the master's report in all respects and established a lien in favor of the electric company and the lumber company for the amounts, respectively, found due them by the master. The court in its decree allowed interest on the amount found to be due the lumber company, which was added by the court to the amount found due by the master, making the decree in favor of the lumber company $206.10 more than the amount found due by the master. To reverse this decree the park company, Thomas D. Hogan and others sued out a writ of error from the Appellate Court for the Third District, where the decree of the circuit court was affirmed in all respects, except the Appellate Court modified the decree in regard to the interest allowed on the sum found due the lumber company by the master in chancery. The Spring-

field Amusement Park Company and others have appealed from the judgment of the Appellate Court to this court.

ALBERT SALZENSTEIN, and GRAHAM & GRAHAM, for appellants.

ALONZO HOFF, for the Haas Electric Co.; BARBER & BARBER, for the Vredenburgh Lumber Co.

Mr. JUSTICE VICKERS delivered the opinion of the court:

*First*—Appellants' first and most serious contention is, that the court erred in decreeing a lien against the interests of F. Reisch & Bros. and Thomas D. Hogan, appellants' contention being that only the interest of the park company should be subjected to a lien for these improvements.

Section 1 of the Mechanic's Lien law, as amended in 1903, (Hurd's Stat. 1905, p. 1317,) provides: "That any person who shall by any contract or contracts, expressed or implied, or partly expressed and partly implied, with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, furnish materials, fixtures, apparatus or machinery for the purpose of, or in the building, altering, repairing or ornamenting any house or other building, * * * shall be known under this act as a contractor, and shall have a lien upon the whole of such lot or tract of land and upon the adjoining or adjacent lots or tracts of land of such owner constituting the same premises and occupied or used in connection with such lot or tract of land as a place of residence or business."

It will be noted that under the language of this statute the owner of a lot or tract of land may subject it to a lien by either making a contract himself or authorizing another to make such contract for him, or by knowingly permitting another to contract for the improvements upon his land. By reference to the evidence set out in the statement preceding this opinion it will be seen that Thomas D. Hogan, as owner, expressly consented that the park company should

have the right to make improvements on the described premises on condition that all improvements, alterations and additions made by the company should remain on the premises at the expiration of the lease, for the benefit of the lessor. It is true that the particular contracts relied on as the basis of the liens in this proceeding are not referred to in the consent agreement of April 1, 1906. Indeed, there is nothing said in the consent agreement about contracts that might be made by the park company in connection with any improvements, alterations or additions that such company might undertake to make. The writing signed by the owner authorized the park company to "make improvements on said described premises," which necessarily carries with it a permission to the park company to make such contracts for labor and materials as were reasonably necessary in the making of the authorized improvements. The authority given by the owner to the sub-lessee to make improvements is not limited, either as to the extent or character, by any language found in the writing. The owner, no doubt, might have specified the character of improvements to be placed on his land and have limited the cost thereof, but in the case at bar the owner did not see proper to place any limitations whatever upon the power of the park company in this regard, and he will therefore not be heard to complain that the cost is excessive or the character of the improvements undesirable. The first section of the Mechanic's Lien law of 1895 made the interest of the owner of the land subject to a lien for improvements "knowingly permitted."

In the case of *Carey-Lombard Lumber Co.* v. *Jones,* 187 Ill. 203, this court held that a lessor who stipulates in the lease for the erection by the lessee of a building upon the demised premises, which is to become the property of the lessor upon the termination of the lease, by expiration or otherwise, subjects his title to mechanics' liens arising from the erection of the building, notwithstanding the lease pro-

vides, under a penalty of forfeiture, that the lessee shall permit no mechanics' liens to attach to the premises. In that case this court reviewed a number of decisions of this and other States, and the conclusion was there reached that one who agrees with another that he shall place buildings or other improvements upon certain property thereby authorizes or knowingly permits such other to improve the property, within the meaning of these terms as used in the Mechanic's Lien law then in force. It was also held in that case that the clause that the lessee "shall permit no mechanics' liens to attach to the premises" was merely a covenant on the part of the lessee that he would discharge such liens, and that such clause did not prevent the lien from attaching as between the owner and the party entitled thereto. This case has been re-affirmed in *Crandall* v. *Sorg,* 198 Ill. 48, and also in *Sorg* v. *Crandall,* 233 id. 79.

Under the rule laid down in the foregoing authorities we are of the opinion that there was no error in holding that these improvements had been knowingly permitted by the owner of the fee.

*Second*—Appellants contend, under their second point, that many of the items in the respective bills were not for matters for which the law allows a lien. Apparently both the electric company and the lumber company proceeded in the court below upon the assumption that a *prima facie* case was made out by proving a contract and the delivery of the material upon the premises to be used in improvements to be made thereon. Section 7 of the Lien law of 1903 provides, among other things: "No such lien shall be defeated to the proper amount thereof because of an error or overcharging on the part of any person claiming a lien therefor under this act, unless it shall be shown that such error or overcharge is made with intent to defraud; nor shall any such lien for material be defeated because of lack of proof that the material after the delivery thereof, actually entered into the construction of such building or improvement, al-

though it be shown that such material was not actually used in the construction of such building or improvement: *Provided,* it is shown that such material was delivered either to such owner or his agent for such building or improvement to be used in such building or improvement, or at the place where said building or improvement was being constructed, for the purpose of being used in construction."

By reference to section 1 it will be found that it is provided that a lien shall be allowed in favor of the person who shall, under the conditions therein provided, "furnish materials, fixtures, apparatus or machinery for the purpose of, or in the building, altering, repairing or ornamenting any house * * * or sidewalk," etc. This section of the statute is more comprehensive than the language quoted above from section 7. The provision that it shall not be necessary to prove that material actually delivered to the owner or his agent, or at the place where such building or improvement was being constructed, was actually used in the construction or improvement, is limited to *material,* and does not extend to "fixtures, apparatus or machinery," for which a lien may be established under section 1. The words "fixtures, apparatus or machinery" are used in section 1 in addition to the word "materials," and are intended to designate things for which a lien may be established other than materials.

Even if it be conceded, which we do not decide, that under section 7 it is not necessary to prove that material delivered for the purpose of being used in the construction of a building or improvement actually entered into and was used in the building or improvement, can it be said that proof of the mere delivery of fixtures, apparatus and machinery is sufficient to authorize a decree establishing a lien, without any proof that such fixtures, apparatus and machinery were ever used in such a manner as to become attached to or form a part of the real estate? Commencing with the case of *Hunter* v. *Blanchard,* 18 Ill. 318, and com-

ing down to *Compound Lumber Co.* v. *Murphy,* 169 id. 343, this court held that under the law which existed prior to the revision of 1895 the lien could only be established to the extent of materials actually used in the construction of the building. It was no doubt to meet the rule of law thus established that that portion of section 7 of the Mechanic's Lien law of 1903 which we have quoted was enacted. The principle underlying the cases which limit the lien to the extent of materials actually used in the construction of the building is, that it is contrary to justice to burden real estate with liens to pay for chattels which in no sense could be supposed to enhance the value of the real estate, hence where a lien was sought to be established for fixtures, apparatus or machinery, it was necessary to allege and prove that the things for which a lien was claimed were so attached to the building or improvement as to become a part of the real estate. A full discussion of the law, illustrated by many citations from various States of the Union, will be found in 27 Cyc., page 38, where it is said in the text: "Whether or not machinery is within the lien laws usually depends upon whether it has become a fixture. If it is stationary and firmly attached to the realty, so as to become a part thereof, it is the subject of a lien, otherwise not." In *Drew* v. *Mason,* 81 Ill. 498, it was held that furnishing material and labor in placing a lightning rod on a house is not furnishing materials and labor in building, altering, repairing or ornamenting a house, in the sense those terms are used in the Mechanic's Lien law; while in *Dobschuetz* v. *Holliday,* 82 Ill. 371, it was held that a steam engine, machinery and fixtures attached to the soil by a lessee thereof for the purpose of hoisting coal from mines situated thereon, including all boxes and all other necessary appliances connected therewith, become a part of the lessee's estate therein and entitle the party furnishing such engine and fixtures to a mechanic's lien against the estate of the lessee on account thereof.

By reference to the electric company's bill of particulars filed with and made a part of its bill, it will be seen that a very large number of the items which enter into the aggregate amount of its claim are matters for which no lien should have been established without proof showing in what manner, if at all, they were connected with the real estate upon which it is sought to establish a lien. Thus, in the claim of the electric company there is included a charge of $577.50 for two electric motors, for which a lien is claimed and allowed without any evidence whatever showing that these machines have been so installed as to become a part of the real estate. Included in the same bill are many other items for which no lien should have been allowed without proof that they were so attached to the real estate as to become permanent fixtures or that they were used in connection with the proper installation of other lienable things. As illustrating the class of items now under consideration, the following may be mentioned: Sulphuric acid, carboys, Westinghouse knife switch, gasoline, fuse blocks, fuse plugs, fusable knife switch, plug cut-outs, lamp cord, lamps, clusters and reflectors, arc lamp pole tops, poles and candelabra base lamps. These items, together with others of like character, constitute a very large portion of the claim of the electric company. By reference to the evidence of Herman Armbruster, who superintended the installation of all of this work, which is set out very fully in the statement preceding this opinion, it will be found that the work of installing these improvements was put upon buildings, refreshment stands, pagodas, signs, dancing pavilion, bridge, theater, arcade, and various other places of amusement in the park. He says: "We decorated an actual tree, called the 'Christmas Tree;' we wired that complete;" that light clusters were installed at the entrance of the theater and on the band stand. It is utterly impossible to tell from his evidence what part of this work is for lienable matters and what is not, and there is no other evidence

in the record bearing on that question. There is also included in the electric company's bill a number of items for street car tickets and meals for superintendent. We are unable to see how such items could possibly become the basis of a mechanic's lien under the contract relied upon. There is also an item for carboys which the bill shows were to be returned. This item was improperly included in the amount of the lien.

It is said by appellees that even if non-lienable items were included in the electric company's claim, there have been payments made which the court ought to apply in discharge of such non-lienable items and affirm the decree, since the amount now due does not exceed the amount for which the electric company is clearly entitled to a lien. This view was adopted by the Appellate Court, and resulted in an affirmance by that court on the authority of *Monson* v. *Meyer,* 190 Ill. 105, and *Barbee* v. *Morris,* 221 id. 382. The first of the above cited cases announces the rule that equity requires the debtor to pay all of his obligations, and that the court will credit a payment so as to give the creditor the best security for the debt remaining unpaid. The case of *Barbee* v. *Morris* makes application of this equitable rule to a general payment made upon a building contract where the parties have not made any specific application thereof, and holds that a court of equity may properly credit the payment upon the contract so as to include an item for extra work for which the creditor would not, under the contract, be entitled to a lien, and thus give him the security of a mechanic's lien for the amount remaining unpaid. Without questioning the rule announced in these cases, we are of the opinion that it is erroneously applied to the facts in this case. The evidence shows that the only credit entered upon the bill of the electric company prior to the decree in the circuit court was an item of $158.16 for material returned. The method of book-keeping by the electric company was to charge all items that were fur-

nished under the contract to the park company and upon the return of any items a credit was entered, thus canceling the charge made for such item. If the return of these goods can be regarded as a payment at all, it would only be a payment of the amount charged for the specific articles returned, and could not in any view be regarded as a general payment, which a court of equity would apply to non-lienable items, within the equitable rule announced in the foregoing cases. If the material returned was of a class for which a lien might be given upon proof of its mere delivery, such lien would be defeated by the voluntary removal of the material by the contractor from the premises. If the material returned was lumber, the lien which the statute gives upon proof of the delivery of such material at the place of the improvement could not be transferred by the removal of the lumber to other items for which the law gives no lien. The return of material to the amount of $158.16 only had the effect of canceling the charge made for the items included in that amount.

There is a statement in appellees' brief to the effect that there have been payments made on this decree, aggregating about $2500, since the decree was rendered in the lower court, and the electric company seeks to avail itself of this fact in answer to the alleged error committed by including in the decree non-lienable items. To this contention it may be replied (1) that the case must be determined in a court of review upon the record made in the trial court, and we cannot take into consideration facts *dehors* the record that are only brought to our attention by the statement of counsel in their briefs; (2) the state of the record is such that it is impossible to separate the lienable from the non-lienable items, and until such items are separated we cannot tell what the amount of either is. There are no grounds here for the contention that the error of the trial court is cured by the application of payments to the items erroneously included in the decree.

236—30

*Third*—The master in chancery found the amount due the lumber company to be $4111.73. The lumber company filed no objections to this finding. The circuit court found the amount due the lumber company to be $4317.83 and rendered a decree for that amount. The court obtained the larger amount by the addition of $206.10 interest. The Appellate Court struck out the item of interest and affirmed the decree in favor of the lumber company for $4111.73. In this we think the Appellate Court is clearly right. The finding of the master in chancery is conclusive upon the parties as to all questions wherein the finding is not excepted to. *Glos* v. *Hoban,* 212 Ill. 222.

Upon evidence heard, an attorney fee of $125 was allowed the lumber company's solicitors. Since this case was heard in the Appellate Court, this court, in the case of *Manowski* v. *Stephan,* 233 Ill. 409, has held that portion of the Mechanic's Lien act allowing attorney fees for the lienor's solicitors unconstitutional. No objection or exception to the allowance of attorney fees was made before the master or in the court below, nor was the constitutional question raised until the case reached this court. We are of the opinion that appellants have waived their right to raise this question by failing to raise it in the court below, and if it had been so raised it would have been waived by taking the case to the Appellate Court instead of bringing it directly to this court.

The judgment of the Appellate Court will be affirmed in all respects in so far as the same relates to the decree in favor of the lumber company, and in so far as it relates to the electric company the decree of the circuit court and the judgment of the Appellate Court are reversed and the cause remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed in part and remanded.*