DETERMINED IN THE

## SECOND DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1925.

---

Edward Hines Lumber Company, Appellee, v. Great Lakes Chemical Works, Inc., et al. Adolph F. Hottinger and Sherman Taylor, Appellants, and Johns-Manville Company, Frank R. Rosner, Paul Borchardt, Highland Park Fuel Company, Cross-defendants, Appellees.

### Gen. No. 7,338.

1. MECHANICS' LIENS—*when land sold on contract subject to liens for improvements by purchaser.* The owner of land subjected the fee therein to mechanics' liens when he sold the land on a contract which let the purchaser into possession with the right to make such suitable improvements and alterations as were necessary to adapt the premises for the chemical and dye business in which the purchaser and his associates were about to engage.

2. SAVING QUESTIONS FOR REVIEW—*insufficiency of general objection to save question of variance.* Variances between the pleadings and proofs cannot be availed of when appellants fail to point out in what the alleged variance consists but merely state in a general way that there was a variance between the pleadings and proofs.

3. MECHANICS' LIENS—*when dye tanks or kettles are lienable.* Chemical tanks or kettles were subject to the Mechanics' Liens Law, not trade fixtures, where the land and premises were to be used for the location thereon of chemical works and, to properly prepare them for that purpose and to carry on the manufacture of dyes as was contemplated, it was necessary that the tanks be constructed and in their erection they were attached to and became part of the realty.

(246)

Edward Hines Lumber Co. v. G. L. Chemical Wks., 237 Ill. App. 246.

4. APPEAL AND ERROR—*review of evidence in chancery cause on incomplete transcript following præcipe.* Where the præcipe in a chancery case does not ask that all of the evidence be brought up but enumerates a list of pleadings, orders and evidence to be included in the record and directs that exhibits attached to testimony are to be omitted, appellants cannot insist that the decree be reversed on the ground that it is not supported by the evidence.

Appeal by defendants from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding. Heard in this court at the April term, 1924. Affirmed. Opinion filed March 27, 1925.

RUDOLPH WOLFNER and A. S. & E. W. FROEHLICH, for appellants.

WILLIAMS S. BENNETT, for Edward Hines Lumber Company, appellee. EDWARD L. ENGLAND for Johns-Manville Company, appellee. ELMER W. ADKINSON, for Frank R. Rosner, appellee. SCHUMACHER & MURPHY, for Paul Borchardt, appellee. E. S. GAIL, for Highland Park Fuel Company, appellee; THOMAS E. MURPHY, of counsel.

MR. PRESIDING JUSTICE JETT delivered the opinion of the court.

This is a proceeding to establish mechanics' liens against certain real estate in Lake county, of which appellants Adolph F. Hottinger and Sherman Taylor were owners, for labor and materials furnished between June and December, 1920, by Edward Hines Lumber Company, appellee, and four other lien claimants also appellees herein, upon orders or contracts made by lien claimants with Great Lakes Chemical Works, Inc., or with Bennett & Davis, Inc., or with both.

The lands mentioned in the bill of complaint and on which the improvements in question were made by the respective lien claimants are described as follows: As that part of the southeast quarter of the northwest quarter of Section 27, Township 43 north, Range 12

east, of the 3rd Principal Meridian, lying west of highway and also of right of way of Chicago Northern Railway Company, in Lake county.

It appears that each of the appellees filed a verified statement of claim and a lien with the clerk of the circuit court of Lake county, giving a correct description of the premises together with a brief statement of the contract, and showing the balance due, within four months after completion of their contracts.

It further appears that all of appellees herein brought suit or filed intervening petitions to enforce their liens within two years after the completion of their contracts. The appellee Paul Borchardt filed an amended petition, before the master made his report, by leave of court and without objection from appellants, to make the allegations in the amended petition conform to the proof as made.

Hottinger and Taylor, appellants, on May 10, 1920, entered into a contract with David A. Bennett for the sale of the premises in question upon future payments and contract for a deed.

Under the terms of the contract Bennett was to be let into possession upon payment of $5000 and was given a right to make "such suitable changes, improvements and alterations as may be necessary to adapt the premises to the chemical and dye business in which he and his associates are about to engage"; and by clause 6 of said contract it was provided that Bennett and his associates "contemplate the organization of a corporation under the laws of the State of Illinois to engage in the manufacture of dyes and other chemical products upon the said premises and that upon complete organization thereof, this instrument and all the rights of the second party hereunder are to be transferred and assigned to said corporation. Parties of the first part agree said assignment may be made and that this instrument shall be as valid and binding in the hands of the assignee as before such assignment."

The corporation contemplated by the said contract was organized under the laws of the State of Illinois as the Great Lakes Chemical Works, Incorporated, June 2, 1920. The said David A. Bennett was one of the organizers and directors and also president of the said company. Bennett was a subscriber for a large amount of the capital stock. He paid for his stock, in part, by assigning over to the corporation all his right, title and interest in the contract hereinbefore mentioned with Hottinger & Taylor.

The contract was presented by Bennett to the directors of the Great Lakes Chemical Works at their first meeting and accepted by them.

After the organization of the Great Lakes Chemical Works, Inc., the appellees and each of them entered into their several contracts, either with the Great Lakes Chemical Works or with Bennett & Davis, or with both. The said David A. Bennett was president and one of the directors of Bennett & Davis, Inc. The Great Lakes Chemical Works, Inc., and Bennett & Davis, Inc., both became bankrupts in December, 1920.

The evidence establishes the fact that Bennett paid the $5,000 to Hottinger and Taylor, and he was let into possession after the execution of said contract on May 10, 1920, and started the work of remodeling; that after the organization of the Great Lakes Chemical Works on June 2, 1920, the work of making the necessary changes, alterations and repairs to convert the premises into a suitable plant for manufacturing dyes and chemicals was done by the Great Lakes Chemical Works; that the work was done under Bennett's direction; that the said premises had been used for a brickyard and that the improvements, alterations and repairs which were made were necessary to make them suitable for the dye and chemical business.

It is undisputed that the materials for which the several contracts were made were delivered to the

Great Lakes Chemical Works upon the premises in question and were used thereon in making the necessary alterations and repairs; nor is it disputed that the said amounts as found by the decree are due and owing to the several appellees for material.

The evidence discloses that the appellant Taylor was in the City of Highland Park two or three times each week during the time the repairs were being made; that he heard complaints of the Great Lakes Chemical Works being a nuisance and knew of bad odors; he knew that some changes would have to be made to enable the company to manufacture dyes.

The court by its decree found that by virtue of the terms of the contract the appellants had as owners given to the said David A. Bennett, and to all parties in possession of said premises by, through or under him, the authority to make contracts for labor and materials to improve the premises in question and thereby to bind the interests of said owners in the real estate for the payment of all claims arising thereunder.

The court also sustained a supplemental finding of the master upon a re-reference to him that certain tanks which had been manufactured by lien claimant Rosner were intended by the parties to become part of the real estate, and establish a lien against the premises for the payment for the contract price of the tanks.

It is the contention of appellants that the decree is erroneous, and that there are fatal variances between the respective pleadings and proofs that were adduced to support the liens.

From the decree of the circuit court appellants prosecute this appeal.

It is insisted by appellants that by reason of the terms of the contract and under the showing made in the record by the respective lien claimants no right to liens was established.

Section 1 of chapter 82, Mechanics' Liens Law

[Cahill's St. ch. 82, ¶ 1] provides: ''That any person who shall by any contract or contracts, express or implied, * * * with the owner of a lot or tract of land, or with one whom such owner has authorized or knowingly permitted to contract for the improvement of, or to improve the same, furnish material, fixtures, apparatus or machinery, forms or form work used in the process of construction where cement, concrete or like material is used for the purpose of or in the building, altering, repairing or ornamenting any house or other building, * * * on the order of his agent, architect, structural engineer or superintendent having charge of the improvements, building, altering, repairing or ornamenting the same, shall be known under this Act as a contractor, and shall have a lien upon the whole of such lot or tract of land. * * * This lien shall extend to an estate in fee, for life, for years, or any other estate or any right of redemption, or other interest which such owner may have in the lot or tract of land at the time of making such contract or may subsequently acquire therein.''

In view of the language of the statute, have appellees made out a case, and brought themselves within the provisions of the lien law?

*Haas Elec. & Mfg. Co. v. Springfield Amusement Co.*, 236 Ill. 452, is a case in which the Haas Electric Company entered into a contract with the Amusement Company to make certain improvements and repairs upon a park. It appears that the Park Company had a lease from Hogan the owner of the fee. There was a written consent signed by Hogan reciting that the Park Company should have the right to make improvements on the premises provided that all of the improvements, alterations and additions made by the said company should remain on the premises at the expiration of the lease, for the benefit of the lessor. The court, in holding that Hogan, by giving permission to the lessee to make the improvements thereby subjected his fee to mechanics' liens for such improve-

ments and after citing section 1 of the Mechanics' Liens Law [Cahill's St. ch. 82, ¶ 1] at page 458, said: "It will be noted that under the language of this statute the owner of a lot or tract of land may subject it to a lien by either making a contract himself or authorizing another to make such a contract for him or by knowingly permitting another to contract for the improvements upon his land. * * * The writing signed by the owner authorized the Park Company to make improvements on said described premises, which necessarily carries with it a permission to the Park Company to make such contracts for labor and materials as were reasonably necessary in the making of the authorized improvements."

In the instant case the appellants in their contract provided that the purchaser should be let into possession and shall "have the right to make such suitable changes, improvements and alterations as may be necessary to adapt the premises for the chemical and dye business in which he and his associates are about to engage."

It is established by the testimony that these repairs and improvements were necessary to convert the premises into a plant suitable for manufacturing dyes and chemicals, and under the authority of *Haas Elec. & Mfg. Co. v. Springfield Amusement Co., supra,* it clearly appears that the appellants, by thus authorizing these improvements, subjected their fee to the mechanics' liens of appellees.

*Boyer v. Keller,* 258 Ill. 106, is a case where the owners had in their lease given the lessee permission to make improvements upon the premises. The building in question had been used as a skating rink and it was leased for a motion picture theater. The lease provided: "Privilege is accorded to second party to make alterations and repairs to exterior and interior of said buildings, all of which is to be paid for by second party, except that the first party agrees to

paint the front of said building with two coats of paint.'' The lessee made the repairs but failed to pay the contractor, who brought suit to subject the property to a lien under the Mechanics' Liens Law and in the decision of the case the court at page 113 said: ''As to the contention that the improvements were not, in fact, made with the permission or authority of the owners, we have before us the provisions of the lease, which expressly gave Keller that permission.'' The holding of this case is to the effect that the permission given in the lease was sufficient to sustain the liens.

In *Loeff v. Meyer*, 284 Ill. 114, permission was given in the lease to make the improvements upon 10 days' previous notice in writing to the lessor. While in this case the owner had actual notice that the improvements were being made the court cites with approval the case of *Haas Elec. & Mfg. Co. v. Springfield Amusement Co., supra,* and at page 117 says: ''The agreement of a landlord with his tenant to permit the latter to improve at his own cost the rented property merely grants a privilege to the tenant but does not relieve the land from the lien imposed by the statute. The landlord may exempt his land from any lien by not permitting the improvement to be made or by requiring beforehand a release of the lien by the contractor, but if he permits the making of the improvement on credit he subjects his land to the lien of the statute if the tenant fails to pay in accordance with his contract.''

After an examination of the authorities cited by appellants and appellees, we are of the opinion that by reason of the contract introduced in evidence in this cause and the facts and circumstances as shown by the record that the lien claimants have brought themselves within section 1 of the Liens Act [Cahill's St. ch. 82, ¶ 1].

It is next insisted that there is a variance between the pleadings and the proof. From the evidence in

this case it is apparent that Bennett & Davis and the Great Lakes Chemical Works were practically one and the same, and that David A. Bennett, who was the controlling power in both corporations, the president of both, and a director of both and owner of more than three-fourths of the stock of the Great Lakes Chemical Works, in making the lien contracts with the several appellees sometimes used the name of "Bennett & Davis," sometimes "Great Lakes Chemical Works," and sometimes both of these but in all cases, whether acting through one or the agency of the other, the contracts were in fact made for the use and benefit of the Great Lakes Chemical Works.

After an examination of the record and in view of all the facts as disclosed we are not prepared to say that there is any variance between the pleadings and the proof, such as would preclude the claimants or any of them from establishing their liens. Moreover, if there was a variance it could not be availed of as appellants have failed to point out in what the alleged variance consisted either in the objections before the master or the exceptions before the court and must be held to have waived the same.

Appellants' objections relating to a variance before the master, which were permitted to stand as exceptions before the court, are that there is a variance between the pleadings and the proof. The objection is as follows: "Erred in failure to find and should have found fatal variances between the pleadings and proof; namely between the bill and proof to support same, and between cross petitions of respective lien claimants and the proofs respectively adduced by each; by reason of which variances complainant and lien claimants wholly failed to sustain and establish their said liens."

The objections filed to the report of the master and which stand as exceptions before the court in relation to the question of variance are indefinite and fail to point out specifically the supposed variance.

In *Probst Const. Co. v. Foley,* 166 Ill. 31, the court was requested to instruct the jury to find for the defendant on the ground of a variance between the pleadings and the evidence, and at page 33 the court said: "In order to raise the question of variance, it is necessary for the defendant to indicate specifically the variance and point out in what it consisted so as to enable the court to pass upon the question intelligently and also to enable the plaintiff to so amend his pleading as to make it conform to the evidence. The defendant not having done this, but having charged a variance only in general terms, the objection must be considered as waived and the question of variance cannot be raised here."

In *Springer v. Kroeschell,* 161 Ill. 358, in speaking of the question of variance, at page 371 the court said: "Objections to a master's report should be made before the master before the report is turned into court, and should point out the grounds of objection with reasonable certainty. * * * Such exceptions are regarded as in the nature of special demurrers, and the party objecting must point out the error."

In *Thornton v. Commonwealth Loan & Building Ass'n,* 181 Ill. 456, speaking on this same subject, the court said, at page 459: "The objection here made is substantially that there is a variance between the allegations of the bill and the proof. Where a variance is complained of and an objection is based upon that ground, defendant should point out specifically in what the alleged variance consists."

Inasmuch as the appellants did no more than to state in a general way that there was a variance between the pleadings and proofs, we are of the opinion that under the decisions last-above cited they must be held to have waived any question as to variance.

It is also contended by appellants that the tanks or kettles furnished by the complainant Rosner were trade fixtures and not lienable. It will be remembered that these particular lands and premises were to be

used for the purpose of locating thereon certain chemical works and that, to properly prepare said premises to carry on the manufacture of dyes as was contemplated by the company organized for that purpose, it was necessary that the ten tanks or kettles should be erected and constructed and in the erection and construction they were attached to and became a part of the realty.

In *Lyle v. Rosenberg,* 192 Ill. App. 378, the court held that "gas ranges and gas stoves" were properly within the term fixtures, apparatus or machinery as applied to modern apartment houses; although attached by a gas pipe and could be disconnected in a few minutes, they are known as fixtures and are within the Mechanics' Liens Act as held in this case.

That the kettles or tanks were part of the realty is fully sustained in *Owings v. Estes,* 256 Ill. 553. The record which appellants have brought to this court does not show that it contains all the evidence.

The præcipe does not ask that a complete record be brought up. It asks the clerk that an enumerated list of pleadings, orders and evidence be included in the record, and at the end of the præcipe are the words: "Exhibits attached to testimony are to be omitted." The clerk's certificate does not certify that it is a complete transcript, but is only full and complete as per præcipe.

*Day v. Davis,* 213 Ill. 53, is a case in which the præcipe did not call for a full and complete transcript of the evidence, and the court at page 55 said: "While it was not the duty of the plaintiff in error to see that the oral proof was preserved, either by a certificate of evidence or by a recital of the findings in the decree, it was his duty to bring before us all that is in the record on that point before he can ask us to declare that the chancellor erred in ordering that the property should be sold. * * * In the absence of a complete record no presumption of error obtains,

but the presumptions are in favor of regular and correct action on the part of the chancellor.''

It is a well-established doctrine in this State that where a party in a chancery case seeks to reverse a decree on the ground that it is not supported by the evidence, he must bring all the evidence there is in the record before he can insist that the decree be reversed upon that ground. If he does not do this, it will be presumed that there was sufficient evidence in the record to support the decree. *Allen v. Henn*, 197 Ill. 486; *Kennard v. Curran*, 239 Ill. 122-130; *McKennan v. Mickelberry*, 242 Ill. 117-137; *Bowman v. Waugh*, 223 Ill. App. 563.

In conclusion we are of the opinion that the decree of the circuit court of Lake county should be affirmed, which is accordingly done.

*Decree affirmed.*