**S. R. Burgoyne, Appellee, v. J. L. Pyle et al., Defendants.**
**Appeal of George W. Keeley and Marie A. Keeley, Appellants.**

**Gen. No. 34,639.**

Opinion filed April 15, 1931.

NICHOLSON, CRANDALL & SNYDER, for appellants.

John E. Owens, for appellee; Clyde C. Fisher, of counsel. A. S. & E. W. Froehlich, for complainant S. R. Burgoyne.

Mr. Justice Friend delivered the opinion of the court.

This is a mechanic's lien proceeding which, together with case number 34538, comes up on appeal from a decree of the superior court of Cook county, finding liens in favor of complainant and two intervening petitioners, and fixing their claims as first liens upon the property in question. These cases were filed by the same complainant against the same general contractor, involving two adjacent and contiguous properties, one owned by the Crepps and the other by the Keeleys, defendants in this case. The two buildings, built from the same plans and specifications, are substantially identical in their construction and were erected under a single building permit. The same lien claimants who intervened in one case intervened in the other, and the attorneys for the respective owners in the two proceedings are identical. Both cases were referred to the same master, and heard at the same respective times throughout. Substantially the same grounds for reversal are urged in both cases, with the exception that in number 34538 it is urged as an additional ground that the master and chancellor erred in accepting as evidence in that proceeding a carbon copy of a transcript of testimony given in this case.

The facts disclose that the real estate involved in this proceeding is located at 7945 Crandon Avenue, in Chicago, Illinois; that immediately adjoining this property on the south is the Crepps property, known as 7949 Crandon Avenue; that J. L. Pyle had separate general contracts for the construction of brick apartment buildings on these two lots for the Keeleys and Crepps at $20,000 and $20,250 respectively, the difference in price being represented by an incinerator to

be installed in the Crepps building; that the subcontracts of Burgoyne, the complainant, and of Heitmann Lumber Company, an intervening petitioner, embracing both buildings, were made orally with Pyle, the general contractor; that Pyle constructed the buildings contemporaneously and the work and material furnished proceeded at the same time on both buildings.

As applicable to all the lien claims it is first urged that no affidavit was filed as a basis for the issuance of process against unknown owners. There was an affidavit attached to the bill of complaint which bears no separate title but refers specifically to "the above entitled cause" and "the foregoing bill of complaint." Defendants argue that the statute requires the affidavit to be *filed* and "that it cannot be said that handing to the clerk of the court a five page document with the legend on the back 'Bill for Mechanic's Lien' amounts to anything more than a request to the clerk to file the document as a bill of complaint." This contention is not supported by the weight of authority however. In *Harris v. Lester,* 80 Ill. 307, one of the principal contentions made to show want of jurisdiction was that the affidavit of nonresidents of several defendants was a nullity because it bore no title either as to the court in which it was filed or the parties to the proceeding. The court in passing upon the validity of this affidavit as a basis of jurisdiction said that:

"An affidavit is simply a declaration, on oath, in writing, sworn to by a party before some person who has authority under the law to administer oaths. It does not depend on the fact whether it is entitled in any cause or in any particular way. Without any caption whatever, it is nevertheless an affidavit.

"All the statute requires in such cases is, that petitioner shall file an affidavit in the office of the clerk of the court in which his petition is pending, showing that any defendant resides or has gone out of the

State, to authorize the clerk to make publication as to such defendant. It does not require the affidavit shall be in any particular form, or even that it shall be entitled in the cause." *McCormick v. Wells,* 83 Ill. 239; *Hays v. Loomis,* 84 Ill. 18, and *Connely v. Rue,* 148 Ill. 207, are to like effect, and we regard these authorities as expressive of the correct rule in this State.

It is further contended that the affidavit is inadequate and insufficient in that it fails to state that upon diligent inquiry the names of the persons who are unknown cannot be ascertained. In advancing this argument counsel clearly confuses two sections of the statute. It is necessary, of course, in order to obtain service upon unknown owners to file two affidavits, one under section 7 and the other under section 12 of the Chancery Act, Cahill's St. ch. 22, ¶¶ 7 and 12. The latter affidavit was duly filed in this case, and no contention is made with reference thereto. It is the affidavit filed under section 7 that is assailed. This section of the statute provides: "An affidavit shall be filed by the party desiring to make any unknown person a party, stating that the names of such persons are unknown; and process shall be issued against all parties, by the name and description given as aforesaid; and notices given by publication, as is required in this Act, shall be sufficient to authorize the court to hear and determine the suit, as though all parties had been sued by their proper names."

Notwithstanding the language of this statute, it is contended that the affidavit should contain an averment that upon diligent inquiry the names of the parties cannot be ascertained. The statute requires no such words nor do the authorities cited in support of the contention. The citations contained in defendants' brief are rulings upon affidavits of nonresidence under section 12 and are therefore inapplicable. The affi-

davit is further criticized on the ground that it describes unknown parties as "unknown owner or owners, holder or holders of the notes" described by the trust deed in question. This criticism is based upon the description being more specific than required by the statute. This is mere surplusage, however, and cannot vitiate the validity of the affidavit. Moreover this appeal is prosecuted by the owners of the property only. These defendants are not unknown and the decree adjudicates nothing between them and the mortgage holders. The only party who could complain of a failure to file a proper affidavit to acquire jurisdiction over the unknown owners would be the unknown owners themselves, holders of the mortgage notes.

It is next urged that there is a want of necessary parties in that the Greenacre Acceptance Company, which filed a bill to foreclose a mechanic's lien for $76.32 in the circuit court of Cook county, and the New City Electric Company, which instituted an action in assumpsit in the municipal court of Chicago, were not made parties to this proceeding. It may be conceded, of course, that necessary parties as defined by the Liens Act, Cahill's St. ch. 82, should be made parties to a bill for mechanic's lien. However, a lack of parties in interest, unless they be such that the court cannot proceed to a final decree in their absence, must be taken advantage of by special demurrer. It was so held in *LaCrosse Lumber Co. v. Grace M. E. Church,* 180 Ill. App. 584. This was not done in the instant case. Moreover, it appears that the bill complained of herein was filed October 17, 1927, the title being registered under the Torrens system. Everyone who had an interest as disclosed by the certificate of title in the registrar's office was made a defendant. The Greenacre Acceptance Company filed its bill to foreclose on January 25, 1928. This suit involved a demand for $76.32 for some 35½ square yards of linoleum con-

tracted for by the defendants, not Pyle, and was filed more than three months after the bill of complaint in this case. In the New City Electric Company suit the plaintiff sought no lien according to the pleadings; it was a plain contract action and the suit therefore constituted no claim against the property in question. Neither is there any evidence in this record that Burgoyne, the complainant, knew, at the time he filed his bill, of the existence of any parties interested in the premises other than those disclosed by the Torrens certificate, all of whom were named as defendants, and it has not been shown by the defendants herein that there were any such parties. In the absence of any showing to the contrary, it will be presumed that there were no other lien claimants than those in the case. The burden of showing a lack of necessary parties is on the defendants. (*Matot v. Barnheisel,* 212 Ill. App. 489.)

Defendants further contend that the amendment to the bill of complaint sets forth a new and different cause of action as to Burgoyne's claim, and that the new cause of action was not commenced within the four months' period limited by section 33 of the Liens Act, Cahill's St. ch. 82, ¶ 33. The amendment in question strikes out the words in parenthesis ("excluding excavating, cement work and cut stone") and substitutes for those words "excluding cement work but including excavating and cut stone." Numerous cases are cited upon this branch of the case. The question to be determined in each instance is whether the amendment sets forth a new cause of action or is merely a restatement of the same cause of action. For the determination of this question the courts have mainly sought to ascertain (1) whether the same evidence would equally prove the case stated in each pleading, and (2) whether the granting of relief under the original pleading would constitute a bar to the claim as

stated in the amended pleading. The case of *Carlin v. City of Chicago,* 262 Ill. 564, states the rule clearly as to the first inquiry. The court in its opinion says:

"If the amended declaration re-states the original cause of action in a different form, the filing of such an amendment relates back to the commencement of the suit and the Statute of Limitations is not a defense. *North Chicago Rolling Mill Co. v. Monka,* 107 Ill. 340; *Swift & Co. v. Foster,* 163 Ill. 50; *Swift & Co. v. Madden,* 165 Ill. 41; *Chicago and Eastern Illinois Railroad Co. v. Wallace,* 202 id. 129; *Chicago City Railway Co. v. McMeen,* 206 Ill. 108; *Wabash Railroad Co. v. Bhymer,* 214 Ill. 579; *Heffron v. Rochester German Ins. Co.,* 220 id. 514.

"One test by which it is determined whether the different counts are for the same or different causes of action is whether the same evidence would support a judgment rendered upon either. This does not mean that the evidence must be admissible, indifferently, under both counts if it was objected to on the ground of variance. The question under this test is, would the same evidence, unobjected to, sustain the substantial averments of both counts? Another test is, could a judgment under one count be successfully pleaded as a former adjudication against the cause of action set out in the other count? In the case at bar the cause of action stated in the original and amended declarations is the same under either test, and the demurrer to the plea of the Statute of Limitations should have been sustained."

As to the second test, the case of *Eisendrath Co. v. Gebhardt,* 222 Ill. 113, a mechanic's lien case, is particularly applicable to the facts before us. The court says:

"It is next argued that if the original bill was filed in time the amended bill set forth a new cause of action on November 10, 1904, and the Statute of Limitations had then run. The cause of action was the same. The

property, the building, the work done, the price, the architect, the parties and the date and amount of the architect's certificate were the same. If relief had been granted under the original bill it would have been a bar to the cause of action for the same work on the same property stated in the amended bill. The amended bill did not state a new cause of action."

As applicable to the claim of Burgoyne, we regard these decisions as controlling. His cause of action is a claim as subcontractor under Pyle for the mason work on the building at a fixed price, $3,815. None of the essentials of his claim is changed by the amendments. According to the record, Burgoyne testified, without objection, that his contract included the excavating and cut stone. The amendment was made long after the proofs were closed and only when defendants pointed out what they believed to be a variance between the pleadings and the proof. Thereupon the amendments were made to conform to the proof, which is the practice approved by all of our courts. The cases cited by defendants involve matters in which there was either a change in the theory of recovery, the inclusion of new property, or the statement of a good cause of action for the first time by the amendment, and are, of course, not applicable to the instant proceedings.

It is further contended that there is no proof of delivery of materials to the premises involved, and that even though this proof had been made, it was also incumbent on complainant and the intervening petitioner to show what materials were used in the construction of each building. Counsel by their argument seek to make this contention applicable to both Burgoyne and the Heitmann Lumber Company. However, Burgoyne had a contract for the mason work, according to plans and specifications, and for a fixed price. His contract did not call for materials to be furnished. Therefore the contention is not applicable

as to him, but only as to the Heitmann Lumber Company, which was awarded a lien for lumber delivered to and used in the two buildings. It appears from the testimony of teamsters, who made the deliveries, and from delivery tickets introduced in evidence that the total of $2,674.97 of lumber was delivered to the buildings in question. Defendants argue that because, out of a given delivery of lumber, more was consumed in one building than in the other, the claimant failed to prove its case under the provisions of section 7 of the Liens Act. That part of section 7 which is material to this issue reads as follows: ''provided it is shown that such material was delivered either to said owner or his agent for such building or improvement, to be used in said building or improvement. . . .'' Under the provisions of this section the claimant is given the alternative of proving either that the material for which the lien is claimed was actually used in the building, or that it was delivered for the purpose of being used. This alternative is important only where the evidence fails to show that the materials were used, or where it affirmatively appears from the evidence that they were not used. In the case before us the claimant not only proved delivery, but also showed that the lumber was actually used in the construction of the buildings. It was not necessary for the intervening petitioner to show that out of every delivery of lumber portions of it were used in one building or the other; it was a sufficient compliance with the statute to prove that all the lumber which was used in the buildings was the identical lumber delivered for the purpose of being used therein, and this fact is abundantly shown by the evidence. These buildings were alike in construction with only some trivial differences. Pyle's foreman testified, without contradiction, that the lumber was used equally in both buildings. The cases cited in defendants' brief do not bear out their contention. In *Cooper v. Palais*

*Royal Theatre Co.,* 242 Ill. App. 184, the lumber which was intended for use in form work was never so used, nor does it appear that it was delivered for use. In *Hoier v. Kaplan,* 313 Ill. 448, the court held that certain items which were not intended to enter into the structure were not lienable, but the court affirmed the right to a lien for materials delivered for the purpose of being used in the structure although never used. In *Beidler & Co. v. Hutchinson,* 233 Ill. 192, the evidence failed to show that the materials were used in ·the ·structure.

In this connection defendants also claim that there is a variance between the petition of the Heitmann Lumber Company and the proofs made in support of its claim. This contention is based upon the fact that the intervening petition has attached to it an itemized list of all the deliveries of lumber, and states that one-half thereof was used in the Keeley building, whereas it appears from the evidence that each delivery was not equally divided in its incorporation into the respective structures. This variance is not specifically pointed out in the exceptions to the master's report or in the assignments of error, as is required under the authorities. *Edward Hines Lbr. Co. v. Great Lakes Chemical Works,* 237 Ill. App. 246. Furthermore, as was said in *Moorehead v. Eggmann,* 190 Ill. App. 578, discrepancies and irregularities of this character will not defeat the allowance of a lien, provided the substance of the claim is properly set forth.

There remains for consideration the claim of William Borrman, upon which the chancellor awarded a lien in the sum of $394, together with interest. Borrman installed heating systems in both buildings under contracts with Pyle, the general contractor. Before the work was completed he received from the Charles Ringer Company, who made the construction loan, the sum of $1,000 on account, representing $500 on each building, and gave a receipt therefor stating the same

to be "on account of contract with J. L. Pyle for steam fitting and heating at 7945 and 7949 Crandon Avenue," dated September 19, 1927. Prior thereto on July 7, 1927, he delivered a waiver of lien to Ringer's representative, Fitch, reading as follows: "the undersigned William Borrman has been employed by J. L. Pyle to furnish *labor and heating material to date* for the building known as No. 7945 Crandon Avenue; also 7949, in the City of Chicago, Cook County, Illinois," and it is contended that Borrman's claim is barred because of this waiver. The evidence discloses that Borrman's wife prepared the waiver of lien and typed therein the words "labor and heating material to date"; that Borrman talked to Fitch at the time the $500 payment was made on each building, who told him to go ahead and get the building finished as they wanted to occupy the same and rent it, and that he could get the balance of his money when the building was finished. There is thus presented the question as to whether this waiver expressed the intention of the lien claimant to waive his claim. It is evident from the facts in this case that the waiver of lien given by Borrman was intended to be only a partial waiver for labor and materials furnished and was so understood by all the parties. Exhibits in evidence indicate that the installation of the heating systems had not been completed when payment on account was made to Borrman. Bills were subsequently rendered to him by Western Plumbing Supply Co. for $36.59 as of September 23, 1927, by Kewanee Boiler Co. for $269.97 as of September 24, 1927, and the record contains a stipulation that one Graham would testify to the delivery to the Crepps building of the articles enumerated in these bills. There is also a stipulation that two workmen would testify that they were employed by Borrman on the Crepps building on September 27, 1927, and rendered services for 11 hours pursuant to

their employment; that another workman employed by the Western Plumbing Supply Co. was hired during the month of September, 1927, and that he delivered the invoice of goods shown on one of the bills in evidence to the Crepps building on September 23, 1927.

It has been held that in cases of ambiguity the doubt should be resolved against the waiver, since it should be presumed, in the absence of clear evidence to the contrary, that one has not disabled himself from the use of so valuable a privilege as that given by statute for the enforcement of builder's rights in the circumstances involved. (*Concord Apt. House Co. v. O'Brien,* 128 Ill. App. 437; *Davis v. LaCrosse Hospital Ass'n,* 121 Wis. 579.) In the former case the court said:

"If the parties had so intended, they would have made it evident by their contract. To be effective, there must be an express covenant or a covenant resulting by implication from the language used, so plain that a mechanic could so understand without seeking a professional interpretation as to its legal effect."

We find no reversible error in the record, and the decree will accordingly be affirmed.

*Affirmed.*

WILSON, P. J., and HEBEL, J., concur.