NOTICE
Decision filed 02/18/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 200150-U

NO. 5-20-0150

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| BALDWIN ENTERPRISES, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff and Counterdefendant, | ) | Jefferson County. |
| | ) | |
| | ) | |
| v. | ) | No. 17-L-28 |
| | ) | |
| ARTICON HOTEL SERVICES, LLC, | ) | |
| | ) | |
| Defendant, Counterplaintiff, and Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PEOPLES NATIONAL BANK, N.A., UNKNOWN OWNER, and UNKNOWN NECESSARY PARTIES, | ) | |
| | ) | |
| Third-Party Defendants | ) | |
| | ) | |
| (Articon Hotel Services, LLC, Counterplaintiff and Third-Party Plaintiff-Appellant; Baldwin Enterprises, Inc., Counterdefendant-Appellee, and Peoples National Bank, N.A., Third-Party Defendant-Appellee). | ) ) ) ) ) | Honorable Michael J. Valentine, Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse those portions of the circuit court's order that granted a summary judgment to hotel owner and bank on contractor's claim for a mechanic's lien on the basis of provision in escrow agreement promising full performance for the contract price free and clear of mechanic's liens, as such provision did not constitute a lien waiver where a dispute between the parties halted performance and

1

payment, and despite unambiguous terms of subsequent lien waivers executed in conjunction with progress payments, whether owner and/or bank, innocently and in good faith, relied upon the waivers as full waivers as to future payments on the construction contract is a question of fact which determines whether parol evidence, such as trade custom and usage, may be considered to determine the intent of the parties. Circuit court erred in holding that provision in escrow agreement executed at beginning of project subordinated contractor's mechanic's lien to bank's lien in funding project because such provision, if construed to provide for such subordination, is prohibited by section 1(d) of the Mechanics Lien Act (770 ILCS 60/1(d) (West 2016)) until at least 50% of construction loan has been disbursed on the project.

¶ 2    The counterplaintiff and third-party plaintiff, Articon Hotel Services, LLC (Articon), appeals, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), the portions of the March 30, 2020, order of the circuit court of Jefferson County, which granted summary judgment in favor of the counterdefendant, Baldwin Enterprises, Inc. (Baldwin), and the third-party defendant, Peoples National Bank (Bank), on Articon's claim for a mechanic's lien on hotel property located in Mt. Vernon. For the following reasons, we reverse and remand for further proceedings.[1]

¶ 3                              BACKGROUND

¶ 4    Baldwin filed an amended complaint for breach of contract against Articon in the circuit court of Jefferson County on August 4, 2017, and a second amended complaint on January 17, 2018. According to the complaint, Baldwin and Articon entered into a contract in 2015 whereby Articon agreed to provide labor and materials necessary for the renovation of Baldwin's existing Holiday Inn hotel in Mt. Vernon and conversion to a 200-guestroom Double Tree by Hilton, in exchange for a payment of $6,065,298.82. The complaint alleges that although Baldwin had paid Articon approximately 73% of the contract price, Articon had completed only approximately 10

_____

[1]Articon also appeals the circuit court's order denying its motion for summary judgment as to its claim for a mechanic's lien. However, because an order denying a motion for summary judgment does not finally determine any count or issue in this action, it is not appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

2

to 15% of the construction on the property. The complaint further alleges that Articon stopped working and abandoned the project on February 27, 2017, and the estimated cost to complete the work is more than $1,549,748.06. The complaint acknowledges that Articon submitted draw requests on the project that Baldwin refused to pay in the amount of $930,108.17. However, the complaint alleges these pay requests were based on Articon's incorrect representation that 87.14% of the work had been completed under the contract, which is why Baldwin refused to pay. The complaint also outlines areas in which Baldwin alleges Articon's work on the project was defective. Count II alleges a cause of action for slander of title due to a mechanic's lien Articon filed against the hotel property on March 24, 2017, which the complaint alleges was improper.

¶ 5    On August 8, 2017, Articon filed a counterclaim against Baldwin, and a third-party complaint against the Bank, in its capacity as a mortgage holder for the subject property. Count I of Articon's counterclaim/third-party complaint requested to foreclose a mechanic's lien on the property in the amount of $930,108.33, the amount which Articon alleges Baldwin still owes for labor and materials it expended pursuant to the contract. The counterclaim further alleges causes of action against Baldwin for breach of contract, breach of the duty of good faith and fair dealing, and *quantum meruit*.

¶ 6    On September 22, 2017, Baldwin filed an answer and affirmative defenses to Articon's counterclaim. In its sixth affirmative defense, Baldwin asserted that Articon waived its right to assert a mechanic's lien in two different documents. First, a "Waiver of Claims for Payment Agreement" signed by Articon's representative on January 17, 2017, is attached to Baldwin's answer as Exhibit A. This document is a "fill-in-the-blank" form which lists Articon as the contractor and Baldwin as the owner. The form has "check-the-box" options to designate the type of waiver the contractor is making in return for the payment indicated. The first option is titled

3

"Full/Final Waiver- Missouri Residential Jobs," the second option is titled "Full/Final Waiver- any Commercial Jobs and Illinois Residential Jobs," and the third option is titled "Partial Waiver." In the case of Exhibit A, the "filled-in" information provides that, on the project/real property known as "Holiday Inn- Mt. Vernon, IL," and in consideration for receipt of $600,277.20, Articon is subject to the second option, "Full/Final Waiver- any Commercial Jobs and Illinois Residential Jobs." Second, Baldwin attached a document entitled "Construction Disbursing Escrow Agreement No. 154162" (Escrow Agreement) as Exhibit B to its answer. This document, which is entered into between Benchmark Title Company, LLC as escrowee, Baldwin as owner, Articon as contractor, and the Bank as mortgagee, appears to have been executed on October 15, 2015. We will discuss the specific language of these documents in the analysis portion of this order.

¶ 7    On September 25, 2017, the Bank filed its answer and affirmative defenses regarding count I of Articon's counterclaim/third-party complaint which sought to foreclose the mechanic's lien. The Bank also raised waiver of the mechanic's lien as an affirmative defense, for the same reasons as set forth by Baldwin. In addition, as its second affirmative defense, the Bank asserted that another provision of the Escrow Agreement provided that the Bank's mortgage would have priority over any mechanic's lien filed by Baldwin on the project. We will also discuss the specific language of this provision in the analysis portion of this order.

¶ 8    On June 12, 2019, the Bank filed a motion for summary judgment as to count I of Articon's counterclaim/third-party complaint, arguing that Articon waived its mechanic's lien rights in the Escrow Agreement, as well as in the "Waiver of Claims" document executed on January 17, 2017, and on four other occasions, in exchange for progress payments. As an alternative basis for summary judgment in its favor, the Bank argued that its mortgage had priority over any mechanic's

4

lien filed by Articon due to another provision of the Escrow Agreement. The Bank submitted the following exhibits in support of its motion for summary judgment.

¶ 9    Exhibit A to the Bank's motion for summary judgment consists of excerpts from the discovery deposition of Peter Michael Cohen, taken on March 13, 2019. Mr. Cohen was the project superintendent for Articon who represented Articon on the project. Mr. Cohen admitted to signing the Escrow Agreement on behalf of Articon and agreeing to its terms. Additionally, Mr. Cohen admitted to executing, on behalf of Articon, "Waiver of Claims" documents, with the "Full/Final Waiver- any Commercial Jobs and Illinois Residential Jobs" option checked, in exchange for progress payments as follows: (1) June 2, 2016, in exchange for $1,032,978.28; (2) June 2, 2016, in exchange for $241,968.02; (3) January 17, 2017, in exchange for $600,277.20; (4) January 17, 2017, in exchange for $268,417.50; and (5) January 24, 2017, in exchange for $167,688.27. Mr. Cohen also admitted to executing a "Waiver of Claims" document with the "Partial Waiver" box checked on December 6, 2016. While the five "Waiver of Claims" documents indicating a "Full/Final Waiver" are found in the record, this court does not find the "Partial Waiver" document in the record. On July 19, 2019, Baldwin filed its own motion for summary judgment as to count I of Articon's counterclaim/third-party complaint, adopting and incorporating the Bank's arguments and exhibits.

¶ 10    On September 10, 2019, Articon filed a combined cross-motion for summary judgment as to count I of its counterclaim/third-party complaint, and response to the motions for summary judgment filed by the Bank and Baldwin. Articon pointed to the following evidence in opposing the Bank and Baldwin's motions for summary judgment. First, in Mr. Cohen's deposition, he testified that it was his intention when he executed the lien waivers to waive Articon's mechanic's lien for the "amount that is on" each waiver. Articon argued that it is undisputed that the dollar

5

amounts on each waiver match the periodic disbursements on the construction contract that were paid to Articon in exchange for each waiver. In addition, Articon attached deposition testimony of the corporate representative of Benchmark Title, who testified Benchmark Title prepared and issued the waivers for execution by Articon. According to this corporate representative, it is Benchmark's practice to "get a lien waiver for each individual disbursement" of progress payments, that each lien waiver is "associated with that disbursement" and that each lien waiver "covers only that payment." Articon argued that Baldwin and the Bank are not entitled to summary judgment on its mechanic's lien claim because "there is no evidence in the record of good faith reliance on the subject lien waivers by Baldwin or the Bank, or anyone else." As to the purported lien waiver in the Escrow Agreement, Articon argued that any purported waiver is null and void and unenforceable pursuant to section 1(d) of the Mechanics Lien Act (Act) (770 ILCS 60/1(d) (West 2016)), which prohibits lien waivers in anticipation of or contingent upon the award of a construction contract.

¶ 11　　On March 30, 2020, the circuit court entered an order, finding that Articon waived its mechanic's lien rights under the Escrow Agreement, and the Escrow Agreement did not run afoul of section 1(d) of the Act. In addition, the circuit court found that the five "Waiver of Claims" documents were "knowingly and intelligently executed by Articon and were full waivers" of all mechanic's liens on the project. The circuit court also found, as an alternative basis for summary judgment in favor of the Bank, that a provision in the Escrow Agreement required that any mechanic's lien filed by Articon is subordinate to the Bank's mortgage. For these reasons, the circuit court granted summary judgment in favor of the Bank and Baldwin on count I of Articon's counterclaim/third-party complaint. The circuit court included language in its order, pursuant to

6

Illinois Supreme Court 304(b) (eff. Mar. 1, 2016), that there is no just reason to delay enforcement or appeal of its order.[2] On April 27, 2020, Articon filed a notice of appeal.

¶ 12                                                    ANALYSIS

¶ 13    We begin our analysis with the well-established standards for our review of an order granting a summary judgment:

> "Summary judgment is proper when the pleadings, depositions, and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. [Citations.] In making this determination, the record materials must be viewed in the light most favorable to the nonmovant. [Citation.] We review *de novo* an order granting summary judgment. [Citation.]" *In re Marriage of Callahan*, 2013 IL App (1st) 113751, ¶ 16.

¶ 14    Here, the circuit court granted Baldwin and the Bank summary judgment on count I of Articon's counterclaim/third-party complaint, that requested foreclosure of its mechanic's lien on the hotel property, because the circuit court found that Articon fully waived its right to a mechanic's lien. First, the circuit court found that Articon waived its mechanic's lien rights by virtue of a provision in the Escrow Agreement, which contains the following language under a section titled "Contractor Covenants and Agrees":

> "1. To fully commence construction from the date hereof and to fully construct and complete the improvements to the Property in a first-class, workmanlike manner according to the construction contract and the plans and specifications, for the contract amount, as shown in the Disbursement Schedule, with all claims for labor and materials paid in full,

---

[2]Those portions of the circuit court's order that denied Articon's motion for summary judgment, and denied Baldwin's motion for summary judgment on count II of its complaint, for slander of title, are not properly appealable pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 1, 2016). Accordingly, we do not address the propriety of these portions of the circuit court's order.

7

free and clear from mechanic's and materialmen's liens, furnishing lien wavers, paid bills and all affidavits requested by Escrowee; to hold harmless, protect and indemnify Owner, Mortgagee and Escrowee from and against any and all liabilities, losses, damage, expenses and charges, including (but not limited to) attorney[ ] fees and expenses of litigation, which they may sustain resulting, directly or indirectly, from any mechanics' lien claim, or actions to enforce or foreclose such mechanic's liens, affecting the Property; in the event that any mechanics' liens or claims thereof shall be filed against the Property or any action shall be commenced to enforce or foreclose such liens, Contractor within twenty (20) days thereafter, shall cause such mechanics' liens to be released of record and any such actions dismissed, or provide a cash escrow or bond which would release the land from the lien and from any action to enforce or foreclose such lien; and should Contractor fail to do so, Escrowee is authorized (but not obligated to) release such claims or liens and satisfactions of any judgments of foreclosure rendered in such actions, or otherwise necessary for the protection of Escrowee, and Contractor shall reimburse Escrowee for all amounts so advanced, with interest of eighteen percent (18%) per annum[.]"

¶ 15    To ascertain the intention of the parties as to this provision, we first look to the language of this provision, giving the words used therein their ordinary, natural meaning. See *Luczak Brothers, Inc. v. Generes*, 116 Ill. App. 3d 286, 295 (1983). "Any doubts or ambiguities raised by that language will be resolved against the drafter [citation] and against a finding of waiver [citation], since 'it should be presumed, in the absence of clear evidence to the contrary, that one has not disabled himself from the use of so valuable a privilege as that given by statute for the enforcement of builder's rights.' " *Id.* at 296 (quoting *Burgoyne v. Pyle*, 261 Ill. App. 356, 369 (1931)). As the court in *Luczak Brothers, Inc.* found as to similar contract language, we find that

8

the plain language of this provision, which was not drafted by Articon, warranted that the property would be completed, with all claims for labor and material paid, free and clear of any mechanic's or materialmen's liens, *for the contract amount*. *Id.* Thus, as in *Luczak Brothers, Inc.*, this language does not waive Articon's right to a mechanic's lien in the event of nonpayment, and merely provides Benchmark, the Bank, and Baldwin a remedy against Articon should Articon or one of its subcontractors assert a lien after construction was complete and Articon had been paid in full. See *id.* Because we find that this provision in the Escrow Agreement did not operate as a clear and unambiguous waiver of Articon's right to a mechanic's lien for unpaid portions of its work under the construction contract, we turn to the five "Waiver of Claims" documents indicating a "Full/Final Waiver" that the evidence indicates Articon executed in exchange for progress payments on the project.

¶ 16    The language of the "Full/Final Waiver" option in the five "Waiver of Claims" documents states as follows:

> "Contractor/Supplier hereby waives all rights, title and interest to any claim of any kind for payment for its Work; including, but not limited to, claims to a mechanic's or other form of lien or claim on or against: (a) the Property or the improvements thereon; (b) any funds for the Property or the Project, whether held by the Owner or otherwise; or (c) any funds due or to become due any higher-tier contractor. This waiver is applicable to any claims for payment for Work which may hereafter be performed on or for the Property. This waiver is intended to be a full and final waiver of all rights to collect any further payment for Work on or for the Property."

¶ 17    In contrast to the language of the Escrow Agreement, we find that the plain language of the "Full/Final Waiver" option in the "Waiver of Claims" documents reflects a clear and

9

unambiguous waiver of Articon's mechanic's lien rights. Although Articon executed the "Wavier of Claims" documents in exchange for each progress payment, according to the language of the "Full/Final Wavier" option, Articon waived its mechanic's lien rights as to any claims for payment for work that would thereafter be performed on the property. However, this does not end our inquiry as to whether entering summary judgment on this issue is proper. While, as a general rule, an unambiguous waiver of lien rights bars an action under the Act, this rule is only applicable when an innocent party relies on the waiver in making payments. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App 3d 334, 362 (2008). Moreover, whether an innocent party has relied on a lien waiver is a question of fact. *Id.* Thus, for the purposes of summary judgment, consideration of extrinsic evidence as to reliance on lien waivers is permissible. *Id.* at 367. "Specifically, in evaluating a lien waiver defense, it is appropriate to consider evidence relating to the customary practice of the parties as well as the practices in the industry with respect to lien waivers." *Id.*[3]

¶ 18    Baldwin and the Bank are correct that because they produced the lien waiver, the burden has shifted to Articon to avoid the effect of the waiver. *Id.* Thus, it is Articon's burden, in order to defeat the summary judgment motions, to "raise a genuine issue of material fact as to whether there was such reliance." (Internal quotation marks omitted.) *Id.* at 366. Based on the evidence in the record, we find that there is at least a triable issue as to whether the Bank and/or Baldwin innocently relied on these waivers as waivers of Articon's lien rights as to future work it would do

---

[3]For other examples of the application of these principles regarding parol evidence in the context of mechanic's lien waivers, see *Merchants Environmental Industries, Inc. v. SLT Realty Ltd. Partnership*, 314 Ill. App. 3d 848 (2000), and *Premier Electrical Construction Co. v. LaSalle National Bank*, 132 Ill. App. 3d 485 (1984). Baldwin and the Bank argue that these cases are distinguishable because they deal with the lien claims of subcontractors, rather than the general contractor, as is the case before us. However, the statements of the law set forth in these cases do not limit their holdings to the lien claims of subcontractors, but rather speak to the law in relation to lien waivers generally. We find no reason to distinguish contractors and subcontractors in the context of lien waivers, and thus we decline to do so.

on the project for which it was not paid. The Benchmark representative testified that, before disbursing a progress payment, Benchmark required a lien waiver in the amount of the progress payment and considered the waiver to be connected to the payment. The evidence suggests that it was Benchmark Title that relied on the waivers to disburse the progress payments, and no affidavit or other evidence is in the record from any representative of the Bank or Baldwin that they in any way relied on these waivers as waivers of future mechanic's liens. For these reasons, we find that it was improper to grant summary judgment on the issue of the lien waivers at this juncture. Although we do not hold that this evidence is conclusive, we find it sufficient to preclude summary judgment in favor of the Bank and Baldwin based on Articon's full waiver of its mechanic's lien rights.

¶ 19    Regardless of whether Articon waived its mechanic's lien rights, the circuit court also found that the Bank was entitled to summary judgment as to count I of Articon's counterclaim/third-party complaint because a provision in the Escrow Agreement requires that any mechanic's lien filed by Articon is subordinate to the Bank's mortgage on the subject property. This provision, also under a section in the Escrow Agreement titled "Contractor Covenants and Agrees," states as follows:

> "5. Not to permit any changes in or additions to said plans, specifications, or construction contract, without the prior written approval of Owner, Mortgagee, and Escrowee. Should Contractor fail to secure such written approval, Contractor shall hold Mortgagee and Escrowee harmless from all claims, damages and losses (including claims of priority by subcontractors and/or materialmen) resulting from such changes or additions and shall reimburse Escrowee for all costs and attorney[ ] fees incurred by Escrowee arising therefrom. Should Contractor file and attempt to enforce a mechanic's lien against

11

the Property described herein such lien shall be subordinate to (a) the lien of the mortgages (as hereinafter defined) of Mortgagee and of any other Mortgagee whose mortgage has replaced that of the named Mortgagee and (b) any mortgage executed by Owner in favor of Escrowee[.]"

¶ 20 The parties dispute whether the intention of this provision was to allow for subordination of Articon's mechanic's lien to the Bank's mortgage in any event, or whether it was meant to apply only in the event that Articon breached its obligation to obtain written approval for any changes to the plans, specifications, or construction contract. The circuit court adopted the Bank's interpretation of this provision, holding that it provided for subordination of Articon's mechanic's lien in any event. However, section 1(d) of the Act (770 ILCS 60/1(d) (West 2016)) prohibits an agreement to subordinate the priority of a mechanic's lien to a mortgage lien, unless that agreement is entered into after more than 50% of a construction loan has been disbursed that funds improvements to the property. Regardless of the date that Articon and Baldwin entered into the construction contract, subordination in favor of a mortgagee at the beginning of the project, as the Bank claims occurred here, is simply not permitted by the Act.

¶ 21                                   CONCLUSION

¶ 22 For the foregoing reasons, we reverse those portions of the circuit court's order of March 30, 2020, which granted summary judgment in favor of Baldwin and the Bank on count I of Articon's counterclaim/third-party complaint and remand for further proceedings consistent with this order.

¶ 23 Reversed and remanded.

12